KATE G. DALEY, Respondent, v. FREDERICK A. MICHAEL, Appellant.

Third Department, June 19, 1923.

Gifts — Liberty bonds were delivered to one of three sisters with directions to hold and cut coupons — one bond was handed to plaintiff who gave it to defendant for safekeeping — donor subsequently asked sister to whom he delivered bonds to return same — defendant surrendered bond held for plaintiff — plaintiff sues in replevin — gift was not established.

In an action of replevin to recover possession of a Liberty bond, it appeared that the owner delivered certain Liberty bonds by mail to his sister, with directions not to sell the bonds to brokers, but to hold them and cut the coupons, and stated also, in writing, as follows: " one for Annie, one for Kitty and one for Hannah;" that the sister to whom the bonds were delivered handed a $1,000 bond and a $100 bond to the plaintiff, another sister; that the plaintiff delivered the two bonds to the defendant who sold the $100 bond and gave the proceeds thereof to the plaintiff, and gave a receipt to the plaintiff for the $1,000 bond which she delivered to him for safekeeping; that thereafter the donor wrote to the sister to whom he had sent the bonds, asking her to return them, and the defendant surrendered the bond which he held for the plaintiff and it was returned to the donor.

*Held*, that a gift to the plaintiff was not established, since the only direction given to the sister to whom the bonds were sent was to hold them and cut the coupons, and, therefore, at the time the donor demanded their redelivery he had never authorized his sister to deliver the bonds to the plaintiff and the gift was never completed, and furthermore, since the donor had not entirely divested himself absolutely and irrevocably of the title, dominion and control of the bonds, he had the power to revoke the gift.

APPEAL by the defendant, Frederick A. Michael, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 13th day of October, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 4th day of November, 1922, denying defendant's motion for a new trial made upon the minutes.

*Frank H. Deal,* for the appellant.

*Schwarte, Slade, Harrington & Goldsmith* [*John A. Slade* of counsel] for the respondent.

HASBROUCK, J.:

Garret R. Gray, a man upwards of seventy years of age and a resident of San Francisco, Cal., had three sisters, Mrs. Hannah Bortle, wife of James Bortle, a resident of Saratoga Lake; Mrs. Kate G. Daley, a widow and resident of Saratoga Springs, and Mrs. Anna Herrick, a resident of Amsterdam. These sisters he had not seen in forty years.

In October, 1919, he forwarded to James Bortle, the husband of Hannah, six Liberty bonds in a package, three $1,000 bonds and three $100 bonds. The package was opened and in it was a newspaper clipping, defendant's Exhibit No. 1, and written in ink the words, "don't sell to brokers. Hold the bonds. Cut coupons. Postoffice will cash coupons." In the package also was another plain piece of writing paper on which was written, "one for Annie, one for Kitty and one for Hannah."

Mrs. Bortle swears that shortly after the receipt of these bonds she received a letter from her brother Garret containing the statement that he had sent bonds, $1,100 for her; $1,100 for Kate and $1,100 for Anna.

Shortly after the receipt of the bonds and the letter above described, there was a meeting at Mrs. Bortle's house in the city of Watervliet where she then lived and seated around the table were Mr. and Mrs. Bortle, her son-in-law, the defendant, Frederick A. Michael, his wife and the plaintiff. The bonds were produced by Mr. Bortle, and on that day Mr. Michael gave the plaintiff the receipt, plaintiff's Exhibit No. 1, and the defendant took possession of the $1,000 bond and sold the $100 bond for Mrs. Daley and gave her the proceeds thereof.

In June, 1920, the plaintiff swears she had a conversation with her brother, Garret Gray, about these bonds in which she swears, " I told him I thought it was very lovely of him to remember me in my widowhood, and he says: ' don't mention it; I am only glad I can do it and it is only a debt I owe.' He says, ' don't give it away, keep it as long as you live, and if there is anything after you pass away it is time enough; but keep it, it is yours, I want you to keep it.' * * * Wherever we happened to be he says, ' that bond is yours, I want you to keep it, don't give it to anyone, * * * it is yours, and when you get through with it, he says, it is time enough to give it up.' "

On the 16th day of December, 1920, Garret wrote to his sister Hannah, Exhibit No. 3, suggesting that she return the large bonds and a box of jewelry, and in response to that letter Mrs. Bortle procured from her son-in-law, the defendant, her $1,000 bond and her $100 bond and from Annie Herrick the $1,000 bond, and the $1,000 bond for which the plaintiff held the defendant's receipt, Exhibit No. 1, and sent them in one package by express to her brother who received them.

From the foregoing facts it will be seen that what Garret Gray did was to put the bonds, including the one in question, one for Annie, one for Kitty and one for Hannah, in the hands of his sister Hannah, to hold and cut coupons.

There is no evidence that he ever authorized Hannah to deliver any of the bonds. The testimony of the plaintiff and her daughter while it described an intention of Gray to give the $1,000 bond to her was ineffective to carry the same out without a direction to Mrs. Bortle to deliver the bond to the plaintiff.

The case contains no statement contradicting the direction to hold and cut the coupons for Annie, Kitty and Hannah. Thus at the time that Gray wrote the letter showing his intention to revoke the gift he had never authorized Mrs. Bortle to deliver the bonds, and the gift was never completed. (*Pickslay* v. *Starr*, 149 N. Y. 432; *Gannon* v. *McGuire*, 160 id. 476; *Matter of Swade*, 65 App. Div. 592; Fowler Pers. Prop. Law [2d ed.], 127.)

It follows that the receipt given by the defendant to the plaintiff was not at all conclusive for the reasons above stated, a receipt being always subject to explanation.

In a recent case, which has never, so far as I can ascertain, been reversed, it was decided that until a donor has entirely divested himself absolutely and irrevocably of the title, dominion and control of the subject of the gift the power to revoke is not lost. (*Matter of Humphrey*, 191 App. Div. 291.)

If such be the law applicable to the facts of the case it seems to me that the court was not authorized to submit to the jury the question as to whether or not the evidence warranted the finding of a gift under the circumstances of the instant case.

I think the judgment should be reversed and the complaint dismissed, with costs to the appellant.

H. T. KELLOGG, Acting P. J., VAN KIRK and HINMAN, JJ., concur.

Judgment and order reversed on the law and complaint dismissed, with costs.